HOUSING PROJECTS — COMMERCIAL PURPOSE A portion of a housing project may be devoted to commercial use. The Attorney General has considered your request for an opinion wherein you ask in your letter of August 13, 1971, the following question: "Can any portion of a housing project for low income families be devoted to commercial use designed to serve the balance of the tenants in the project?" In our telephone conversation of August 20, 1971, you stated that it was your understanding that of the commercial tenants, at least one was a small retail grocery store. The primary purpose of the Act, of course, is to provide sufficient decent housing for those who would not otherwise be able to obtain such housing. In 63 O.S. 1061 [63-1061] (1970), the Housing Authorities set up are given specific statutory powers in regard to public housing. Subsection (d) of this Section provides in part: "To utilize, contract with, act through, assist and cooperate or deal with any person, agency, institution or organization, public or private, where the provision of services, privileges, works, or facilities for or in connection with this project;" Subsection (e) states in part: "To lease, rent, sell, or lease with option to purchase any dwelling, accommodations, lands, buildings, structures or facilities embraced in any project. . .to sell, lease, exchange, transfer, assign, pledge or dispose of any real or personal property or any interest therein. . ." Section 63 O.S. 1062 [63-1062](d) states in part: ". . .Nothing herein shall be construed to limit the amount an authority may charge for non-dwelling facilities . . ." (Emphasis added) Section 63 O.S. 1066 [63-1066] states in part: ". . .The tax exemption provided by this section does not apply to any portion of a project used by a profit making enterprise . . ." (Emphasis added) Section 63 O.S. 1075 [63-1075] states in part: ". . .An authority may waive its exemption hereunder with respect to claims against any profit making enterprise occupying any portion of a project. . ." (Emphasis added) The above Sections taken together indicate that it was the legislative intent to allow some or part of the facilities of a project to be used for purposes other than family dwellings, and to allow a portion of the facilities to be used for commercial purposes. The issue of whether or not a Housing Authority is allowed or prohibited from leasing its facilities to private enterprise has not been decided by the Oklahoma Courts; however, by analogy, there is authority for allowing this type of leasing by municipalities. In Suplett v. City of Tulsa, Okl.,405 P.2d 185 (1965), the Court held in Syllabus 3: "The character of the use required to establish its public use, or purpose, sufficient to support exercise of the right of eminent domain by a municipal corporation need not be the use or benefit of the whole public or state, or a large portion, but may be for inhabitants of the restricted locality; such use and benefit must be in common, but not to particular individuals or estates." In Syllabus 5, the Court held: "Where the Constitution and State laws exempt all property of municipal corporations within the State from taxation, such property is exempt therefrom without regard to the character of the use, and the fact that certain property may be used by private corporations does not abrogate Const., Article X, Section 5 ." The Court held in Syllabus 9: "Where city charter of defendant is interpreted as granting authority to lease real property acquired by purchase or by right of eminent domain, the city may lease public utilities, wisdom of the transaction being a legislative function, and not matter of judicial inquiry." 64 C.J.S., Municipal Corporations, 1809 states: "Generally a municipal corporation may either gratuitously or for compensation permit buildings erected for a municipal purpose to be used incidentally for lawful private purposes, which will not interfere with public use, and such buildings may be leased for a limited period of time for private use where not presently needed for municipal purposes;. . ." Considering all the authorities cited above, it would appear that the Housing Authority may lease a portion of the facilities to private business. In addition, there is the problem of zoning restrictions in this particular area of Oklahoma City. Title 63 O.S. 1067 [63-1067] (1970) states: "All projects of an authority shall be subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which the project is situated." Section 1051 states in the next to the last paragraph: "The powers of an authority shall not include. . . (3) the power to zone or rezone; or (4) the power to make exceptions to zoning ordinances or building regulations of the city or county." Thus, before any business establishment can be put in these units, the zoning requirements would have to be complied with. Lastly, the bondholders have certain rights concerning the security of their bonds. Section 1070 of the Act provides that the Authority shall have the power: "(a) to pledge all or any part of its gross or net rents, fees or revenues to which its rights then exist or may thereafter come into existence. "(b) to covenant against pledging all or any part of its rents, fees or revenues, or against permitting or suffering any lien on such revenues of property; to covenant with respect to limitations on its right to sell, lease, or otherwise dispose of any housing project or any part thereof; and to covenant as to what other or additional debts or obligations may be incurred by it." "(f) To covenant as to the use, maintenance and replacement of any or all of its real or personal property, the insurance to be carried thereon, the use and disposition of insurance money." Thus, there may be provisions in the bonds issued to finance this project that would prohibit this proposed use of the six units involved. The particular provisions in the bonds have to be referred to in order to determine whether or not the proposed uses violate those terms. It is, therefore, the opinion of the Attorney General that your question be answered as follows: A portion of a housing project for low income families may be devoted to commercial use designed to serve the balance of the tenants in the project, provided, the proposed commercial use does not violate the zoning restrictions of the particular area, and the proposed commercial use of the facilities does not violate any of the terms of the bonds sold to finance the facilities. (Todd Markum)